OPINION OF THE COURT
Edward J. McLaughlin, J.
Respondent’s motion to vacate an order of this court approving a support agreement, signed July 23, 1977, and filed and entered on July 26, 1977, whereby respondent agreed to pay $15 per week to the Department of Social Services for the support of his daughter, Charlene, is granted on the grounds that the court lacked the jurisdiction to render the order. (CPLR 5015, subd [a], par 4; Family Ct Act, § 165.) The subsequent petitions to violate, one filed on June 19, 1978, and one filed on November 15, 1978, are, accordingly, dismissed.
*1009 FACTS
On June 30, 1977, respondent signed a written agreement to support his daughter, Charlene, by paying $15 per week to the Support Bureau of Onondaga County for disbursement by the Support Bureau to the Department of Social Services of Onondaga County. The agreement was also signed by John L. Lascaris, the Commissioner of Social Services for Onondaga County. The agreement recited that the respondent had conferred with the Probation Service of the Family Court with a view toward adjustment of the matter and had been advised of his rights. The agreement also contained a clause stating that the respondent waived his right to appear at the submission of the agreement to the Family Court. The court notes that nothing in the support agreement evidences participation or lack of participation by the Probation Department in the attempt to adjust this matter.
On July 7, 1977, the Commissioner of Social Services, John L. Lascaris, filed a verified petition for approval of the support agreement. The petition recited that the petitioner and the respondent had conferred with the Probation Department "in an effort to adjust the matter in accordance with Article 4 of the Family Court Act.” Relying upon these attestations, the court signed an order approving the support agreement.
On July 26, 1978, the respondent appeared in court in response to a petition to violate the support agreement filed by the Commissioner of Social Services. In open court the respondent stated that he did not voluntarily sign the agreement to pay $15 per week. The court appointed an attorney to represent the respondent.
Respondent appeared with his attorney and moved to dismiss the petition to violate on the ground that the probation service had not been involved in the formation of the support agreement. The respondent was then given two weeks to submit motion papers and an affidavit sustaining his allegation to the court. The petitioner, Commissioner of Social Services, at that time was given an additional two weeks to respond to any papers submitted by the respondent. Subsequently, an affidavit was filed on behalf of the respondent, stating that the respondent had no recollection of a third party from the probation service being present when he conferred with the Department of Social Services regarding his support obligations as he had been requested to do in a letter from the Department of Social Services. The Commis *1010 sioner of Social Services, although given an opportunity so to do, made no response to the affidavit submitted on behalf of the respondent.
LAW
"The Family Court is a court of limited jurisdiction and cannot exercise powers beyond those granted to it by statute”. (Borkowski v Borkowski, 38 AD2d 752, 753; NY Const, art VI, § 13, subd b.) Jurisdiction in the instant case is based upon section 425 of the Family Court Act, which concerns agreements to support. "The agreement referred to in that section is one arrived at through efforts by the probation service 'to attempt through conciliation and agreement to adjust suitable cases before a petition is filed.’ (Family Ct Act, § 424, subd [a], par [ii]; L 1962, ch 686).” (Clune v Clune, 57 AD2d 256, 258.)
"Where the method of procedure in any proceeding in which the family court has jurisdiction is not prescribed by this act, the procedure shall be in accord with the rules adopted by the administrative board of the judicial conference”. (Family Ct Act, § 165.) The rule to be followed prior to the formation of an agreement to support are to be found in 22 NYCRR 2504.1-2504.4, which became effective on January 1, 1977. In particular, a procedure for a preliminary conference and adjustment are set forth in 22 NYCRR 2504.3. If after an attempt to adjust a case has been made, a voluntary agreement "for the support of the petitioner and any dependents is brought about * * * it will be reduced to writing by the probation service and submitted to the Family Court for approval”. (22 NYCRR 2504.3 [e] [1]; emphasis added.) The importance of the role of the probation service is further enunciated by 22 NYCRR 2504.4. The probation service is specifically given the task of reducing the agreement to writing. (22 NYCRR 2504.4 [a].) The court is then given authority to "approve the agreement with or without the personal appearance of the parties if it is satisfied that the agreement was entered into voluntarily and is equitable.” (22 NYCRR 2504.4 [b].) Thus, the rules of the Administrative Board of the Judicial Conference amplify the basis of the court’s jurisdiction as found in section 425 of the Family Court Act.
In the instant case the court relied upon the facts averred to by the Commissioner of Social Services in his petition seeking approval of the support agreement, namely that the agreement had been entered into between the parties after the petitioner and the respondent had conferred with the *1011 probation service and arrived at a voluntary agreement for support that was equitable to all concerned. Absent such an assurance, the court is without statutory authority to approve an agreement to support, without the presence of the parties under section 425 of the Family Court Act. Lacking statutory authority, the court lacked the requisite jurisdiction to make an order approving the support agreement. Vacatur is granted and the respondent relieved. (CPLR 5015, subd [a], par 4.)